UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
_____

UNITED STATES OF AMERICA,

                    Plaintiff,


v.                                    **MEMORANDUM OF LAW & ORDER**
                                      Criminal File No. 09-193 (MJD/AJB)


(1) RUSSELL ADAM COLE and
(2) ABBY RAE COLE,

                    Defendants.
_____

Nicole A. Engisch and William J. Otteson, Assistant United States Attorneys,
Counsel for Plaintiff.

Jeffrey B. Steinback and Timothy D. Webb, Timothy D. Webb, PLLC, Counsel for
Defendant Russell Adam Cole.

Shelly B. Kulwin, Kulwin, Masciopinto & Kulwin, LLP, and Andrew M. Luger
and David J. Wallace-Jackson, Greene Espel PLLP, Counsel for Defendant Abby
Rae Cole.


I.      **INTRODUCTION**

        This matter is before the Court on Defendants' Renewed Joint Motion for

Judgment of Acquittal [Docket No. 239] and on Defendants' Joint Motion for a

New Trial [Docket No. 240].  The Court denies both motions.

On June 3, 2010, the jury found Russell Cole guilty on 24 of the 26 charged counts of conspiracy, mail and wire fraud, money laundering and tax evasion. He was found not guilty of Count 15, Wire Fraud on August 16, 2007, and Count 21, Transactional Money Laundering.

Also on June 3, the jury found Abby Cole guilty of Count 1, Conspiracy to Commit Mail Fraud; Count 22, Conspiracy to Defraud the United States; Count 23, Income Tax Evasion for the year 2004; Count 24, Income Tax Evasion for the year 2005; Count 25, Income Tax Evasion for the year 2006; and Count 26, Income Tax Evasion for the year 2007. The jury acquitted Abby Cole on all 18 mail and wire fraud counts as well as on 2 related counts of money laundering.

## II. DISCUSSION

### A. Motion for Judgment of Acquittal

Defendants' Renewed Joint Motion for Judgment of Acquittal [Docket No. 239] requests acquittal under Rule 29(c) for all counts on which guilty verdicts were entered.

#### 1. Rule 29 Standard

Under Rule 29(a), a court "must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R.

Crim. P. 29(a). When considering a motion for judgment of acquittal, the Court

must view the evidence in the light most favorable to the Government, draw all

reasonable inferences that support the verdict, and resolve all conflicts in the

Government's favor. United States v. Santana, 524 F.3d 851, 853 (8th Cir. 2008).

The Court "should not weigh the evidence or assess the credibility of witnesses."

Id. (citation omitted). The Court will reverse the verdict only if "no reasonable

jury could have found the accused guilty beyond a reasonable doubt." Id.

(citation omitted).

"The evidence need not exclude every reasonable hypothesis except guilt;

the essential elements of the crime may be proven by circumstantial as well as

direct evidence." United States v. Baker, 367 F.3d 790, 797 (8th Cir. 2004)

(citation omitted).

### 2. Conspiracy & Fraud

#### a) Legal Requirements for Conspiracy

Defendants argue that the Government cannot prove Conspiracy to

Commit Mail Fraud and Wire Fraud under 18 U.S.C. § 1349.

> To obtain a conviction for conspiracy, the government must prove
> beyond a reasonable doubt that there was an agreement to achieve
> some illegal purpose, that the defendant knew of the agreement, and
> that the defendant knowingly became a part of the conspiracy.

However, the government need not prove an express agreement. [R]ather, the government need only establish a tacit understanding between the parties, and this may be shown wholly through the circumstantial evidence of [the defendant's] actions. [B]ecause the nature of conspiracy entails secrecy, the agreement and members' participation in it must often by established by way of inference from the surrounding circumstances.

United States v. Adams, 401 F.3d 886, 893-94 (8th Cir. 2005) (citations omitted).

"A defendant's willful blindness may serve as the basis for knowledge [to support involvement in a conspiracy] if, in light of certain obvious facts, reasonable inferences support a finding that a defendant's failure to investigate is equivalent to 'burying one's head in the sand.'" United States v. Chavez-Alvarez, 594 F.3d 1062, 1067 (8th Cir. 2010) (citations omitted). "[A] defendant may be convicted for even a minor role in a conspiracy so long as the government proves beyond a reasonable doubt that he or she was a member of the conspiracy." United States v. Lopez, 443 F.3d 1026, 1030 (8th Cir. 2006) (en banc).

### b) Robert Bossany's Role in the Conspiracy

Defendants assert that the Government failed to prove at trial that there was an agreement between the Coles and Robert Bossany to defraud Best Buy through improper bid-to-invoice variances. Defendants rely on Bossany's denial

during cross-examination that he provided favors to Chip Factory in exchange

for the gifts and money Defendants sent him.  Viewing the evidence in the light

most favorable to the Government, there was ample evidence of the existence of

the conspiracy and that Bossany, Russell Cole, and Abby Cole all knowingly

participated in that conspiracy.

Bossany gave conflicting testimony.  However, the jury was not required

to disbelieve all of his testimony.  See Jury Instruction No. 3, 8th Cir. Model Ins. §

1.05 ("You may believe all of what a witness said, or only part of it, or none of

it.").  The jury was reasonable in finding that Bossany lied during cross

examination, since his testimony conflicted with his testimony on direct

examination, his guilty plea, other evidence in the case, and common sense.

On direct examination, Bossany testified, as he had in his plea hearing, that

he conspired with "Russell Cole and Chip Factory," "provided confidential

information to Chip Factory," and "hid evidence of pricing variances that took

place throughout the years."  He testified that he agreed to do these things in

return for the items he received from Defendants.  Specifically, he accepted those

gifts and in turn gave favors.

Furthermore, Bossany himself testified that he did not have authority to authorize Defendants to systemically change their bid prices to higher invoice prices. He further testified that no one else at Best Buy knew about or authorized the system price changes.

Finally, even disregarding all of Bossany's testimony, the jury could have found that Defendants bribed Bossany as part of their conspiracy based entirely on other evidence at trial. Best Buy employee Marvin Drake testified that the information Bossany provided to Chip Factory was confidential. He stated that he was unaware that Bossany allowed Chip Factory to bid $1 to win orders. Drake's testimony is further supported by Bossany's July 19, 2004 email to Russell Cole and Benjamin Ripstein stating that the Chip Factory account had been flagged to be watched by Drake while Bossany was out of the office and urging Russell Cole not to do any dollar part bidding during that time.

Furthermore, Matthew Dickinson's testimony shows that Bossany took steps to hide the Coles' fraud scheme because of the bribes that he received from Chip Factory. In January 2007, Dickinson discovered modest bid-to-invoice variances by Chip Factory and asked Bossany to address them. He mentioned that it might be a topic for the Reverse Logistics Trade Show ("RLTS"). Bossany

testified that he brought the issue to Russell Cole's attention, and Russell Cole requested that Bossany keep the issue off the agenda at the upcoming February RLTS meeting, which Bossany attempted to do. The jury was entitled to find that Russell Cole, who had been making secret payments to Bossany for years, made the request because of those payments.

Bossany never brought Chip Factory's bid-to-invoice variance issue to the attention of anyone else at Best Buy. It is logical to infer that, at Russell Cole's request, Bossany kept Best Buy from becoming aware of Chip Factory's significant bid-to-invoice variances. Even once Dickinson and Drake eventually discovered the full extent of Chip Factory's variances, Bossany remained silent. He never revealed to Best Buy that he had been receiving secret payments from Chip Factory, that he had provided Chip Factory with confidential information, or that he knew that Chip Factory had engaged in any bid-to-invoice variances.

These examples refute Bossany's contention that he had not been bribed by Chip Factory or that he had not engaged in actions in furtherance of the conspiracy because of the bribes. These facts provided a basis for the jury to conclude that Bossany had been involved in the conspiracy to defraud Best Buy

based on his receipt of bribes and his action – or inaction – taken to benefit Chip Factory and not Best Buy.

It would be unreasonable to conclude that Defendants gave Bossany substantial amounts of money out of the goodness of their hearts. Moreover, Defendants hid these payments by sending them to Bossany's home and by writing fake memo line descriptions on some of the checks. Later, when suspicions began to arise, Defendants lied repeatedly and attempted to cover up the payments. Independent of Bossany's testimony, the jury could reasonably have found, beyond a reasonable doubt, that Bossany participated in the conspiracy with the Coles.

### c)    Evidence of Russell Cole's Role in the Conspiracy

The conspiracy, fraud, and money laundering verdicts against Russell Cole are also well supported by the evidence. In addition to the substantial evidence of Russell Cole's guilt discussed above, there is an abundance of additional evidence to support the verdict. For example, in recorded conversations, Russell Cole acknowledged that he and the other conspirators bid "crazy low" to win orders; that they raised prices the "entire time" they were in the program; that they took advantage of Best Buy, "took some things" even Bossany was not

aware of, and "exploited" the system; that they did their price changes on stock orders and kept prices low on individual orders; and that they were able to do these things because Best Buy was not monitoring the system closely enough.

When Chip Factory was caught doing bid-to-invoice variances, instead of simply stating that the price changes were intentional and believed to be acceptable to Best Buy, Russell Cole and Ripstein falsely stated that the price changes were caused by "system issues," "default prices," or "fat-finger" mistakes.  Doug Jantz, the Chip Factory systems manager, corroborated that each of these statements were lies made at Russell Cole's direction.  Marvin Drake testified that, had he known about these lies, Defendants would have been kicked out of the program.  Common sense dictates that, if it were permissible to change a bid price to a higher invoice price, there would be no reason to lie when Best Buy learned of such variances.

Ripstein testified that Russell Cole wanted to keep the price changes "under the radar" and directed him to change prices in particular ways on a particular number of orders to avoid detection.  It was reasonable for the jury to conclude that the reason Defendants only changed some prices is because Defendants knew that the price changes were not permitted and to keep "under

the radar" they made sure that they kept some bid prices the same on their invoices.

Drake testified that Defendants' fraudulent RFP response misrepresented that Chip Factory had more employees than it actually had and that it had higher sales than it actually had. It falsely stated that Chip Factory had a second location for purposes of returns, repairs, and cross-reference research. Drake also testified that Defendants' RFP response represented that Chip Factory would charge certain specified and reasonable prices when, in fact, it charged exorbitantly high prices after changing the prices after the bid. When Best Buy and National Parts representatives visited Chip Factory, Russell Cole and others at Chip Factory engaged in a "smoke and mirrors" show to mislead the visitors about the size and sophistication of Chip Factory's operations.

Defendants' bribes to Bossany throughout a five-year period further support the guilty verdicts in this case. While Defendants were engaged in a multi-million dollar fraud scheme, undetected by Best Buy, they were giving Bossany, who was a Best Buy insider, secret payments and gifts. The jury was reasonable to conclude that the only reason that Defendants sent secret packages

of money and gift cards to the primary point-of-contact at their largest customer was to further their conspiracy and scheme to defraud.

### d)    Integrity of Best Buy Bidding System

Defendants also argue that the conspiracy count must fail because there was no underlying fraud. They claim that the Government failed to show that the PPN was corrupted by Defendants' alleged bribes because Best Buy's auction process was already undermined by improper conduct among PPN vendors and Best Buy employees. Specifically, Defendants point to Bossany's acknowledgment that Best Buy employees received substantial gifts from PPN vendors, and that Bossany also shared confidential Best Buy information with vendors other than Chip Factory. The Court rejects this argument.

The Government presented evidence that bid-to-invoice price changes were not permitted and were contrary to the very essence of the reverse auction. There was evidence that Defendants were informed of this fact by Best Buy and National Parts at the outset of the program, at meetings, and in emails. Moreover, Bossany testified that he did not have the authority to approve Defendants systematically changing their bid prices to a higher invoice price; and

that his superiors at Best Buy did not know about or authorize the systematic price changes.

The fact that other vendors also had price variances and that the PPN did not work as well as intended did not excuse Defendants' fraud.  Significantly, no other vendors were cheating the PPN on a scale close to Chip Factory.  Additionally, as the jury was properly instructed, it was charged with determining the guilt or innocence of the charged Defendants, not of any other persons.

### 3.    Abby Cole – Evidence to Support the Conspiracy Verdict

Defendants claim that the guilty verdict on Count 1, the conspiracy claim, as to Abby Cole, is contrary to the evidence submitted at trial.  They note that Bossany and Ripstein denied entering into an agreement with her or speaking with her about the variances.  There was no third party testimony that anyone ever heard the Coles conspiring with one another.  Defendants argue that, because the jury's verdict against Abby Cole was not sustained by substantial evidence, it must be set aside.

The Court concludes that there was sufficient evidence for a reasonable jury to find, beyond a reasonable doubt, that Abby Cole knowingly joined the

conspiracy to defraud Best Buy. As the Court previously noted, "[b]ecause the nature of conspiracy entails secrecy, the agreement and members' participation in it must often be established by way of inference from the surrounding circumstances." Adams, 401 F.3d at 894.

Abby Cole ordered generic parts to be sold to Best Buy; therefore, she saw the low-ball bid prices and ordered the parts at substantially higher prices. Also, because she monitored Ripstein's commissions, she saw the inflated invoice prices. There was testimony from various Chip Factory employees that the price changes were not a secret at the small company, and that everyone else was aware of the price changes. The jury was entitled to infer that Abby Cole, who owned the company, was aware of the price changes as well.

The guilty verdict is further supported by Ripstein's testimony that Abby Cole called Bossany "greedy." Additionally, there was testimony that Abby Cole participated in the preparation and delivery of envelopes to Bossany. Joseph Kase testified that he saw Abby Cole put money in the envelope to be sent to Bossany. Bank records demonstrated that payments to Bossany came from a joint bank account over which Abby Cole and Russell Cole exercised control. A credit card charge showed that Abby Cole paid for Bossany's and his wife's

weekend stay in April 2004 at the Four Seasons Hotel in Chicago at a rate of more than $400 per night.

The verdict is also supported by Abby Cole's own statements.  In one recording, she is speaking to Ripstein and suggests that they get out from under the fraud allegations by falsely claiming that they were the only vendor who supplied plastics with their LCD screens.  When Ripstein pointed out that other vendors had plastics with their LCDs, Abby Cole suggested that Ripstein tell investigators that it was very difficult to get the plastics, which was untrue.

In another statement to Ripstein, Abby Cole lied and stated that the payments to Bossany were just magazines, there was no money.  When Ripstein expressed concern that someone saw the money being put into the envelopes, she then quickly changed her story and stated that, if there was money, it was loans, and "Bob knows about it."  Abby Cole attempted to convince Ripstein to go along with her and her husband's plan to lie and cover up the fraud, and her efforts fit with Russell Cole's cover-up efforts with Ripstein and Bossany.

The trial evidence showed that Abby Cole joined Russell Cole in the conspiracy and took an active role, including ordering generic parts to be sold to

Best Buy, assisting with the bribes to Bossany, and lying to Ripstein and law enforcement to attempt to cover up the scheme.

### 4. Abby Cole – Allegations of Inconsistent Verdicts

Defendants also argue that because the jury acquitted Abby Cole on the substantive fraud counts and money laundering counts its guilty verdict on the fraud conspiracy count is inconsistent. The Court is not convinced that the verdict is inconsistent, but, even if it were, this would not be grounds for acquittal.

"Even if the acquittals to which the [Coles] point are inconsistent with their convictions on the conspiracy charge, there are numerous cases that indicate that a conviction must stand if there is sufficient evidence in the record to sustain it." United States v. Whatley, 133 F.3d 601, 605 (8th Cir. 1998) (citation omitted). "[I]t is well established that inconsistent verdicts on the same indictment as to the same defendant are unobjectionable." United States v. Fuller, 374 F.3d 617, 623 (8th Cir. 2004) (citing United States v. Powell, 469 U.S. 57, 62-63 (1984)). "[T]here is no reason to vacate [a defendant's] conviction merely because the verdicts cannot rationally be reconciled." Powell, 469 U.S. at 69. This rule applies even in a case in which the jury acquits a defendant of a

predicate felony, but convicts him on the compound felony.  Id. at 67-69.

Therefore, the Court rejects the request for a judgment of acquittal based on the

allegation of inconsistent verdicts.

### 5.    Allegation of an Impermissible Variance

#### a)    Legal Standard

Defendants next claim that there were impermissible variances at trial.

> A variance arises when the evidence presented proves facts that are
> materially different from those alleged in the indictment.  [A]
> variance in the evidence affects the defendant's right to adequate
> notice under the Sixth Amendment.  When a variance occurs, [t]he
> charging document does not change, only the evidence against
> which the defendant expected to defend varies.

United States v. Buchanan, 574 F.3d 554, 564-65 (8th Cir. 2009).  The

determination of whether a variance exists is a question of law.  Id. at 565.  "In

determining whether a variance exists, [the Court] consider[s] the totality of the

circumstances, including the nature of the activities, the location and time frame

in which the activities were performed, and the participants involved."  United

States v. Abfalter, 340 F.3d 646, 650 (8th Cir. 2003) (citation omitted).

There is no fatal variance with regard to a conspiracy charge simply

because proof of overt acts, other than those charged in the indictment, are

introduced at trial.  United States v. Begnaud, 783 F.2d 144, 148 (8th Cir. 1986).

The question is whether "the indictment fully and fairly apprised the defendant of the charges he or she must meet at trial." Id. (citation omitted). "[W]here the indictment fairly specifies the offense charged and notifies the defendant of the particulars, the defendant has knowledge that other overt acts underlying the conspiracy might be pleaded at trial." Id. (citation omitted).

### b) Variance Regarding Conspiracy and Fraud Counts

The Court concludes that there was no impermissible variance regarding the conspiracy and fraud counts. Throughout the trial, the Government emphasized that this case was about Defendants' $41 million fraudulent bidding scheme. This was consistent with the allegations in the Indictment. The trial evidence regarding Defendants' bribes to Bossany, lies, and cover-up was also consistent with the allegations in the Indictment. Overall, the Government's theory of the case in the Indictment was the same as that presented at trial, and the Indictment fully and fairly apprised Defendants of the charges against them.

### c) Variance Regarding Tax Counts

Defendants argue that the Government offered a new cost of goods sold ("COGS") theory at the very end of trial that was materially different from the fluff theory that had been advanced both before and during the trial. Defendants

also assert that they prepared a defense specifically tailored to the Government's theory that they added fluff and false shipping charges to inflate their COGS and reduce their taxable income. They argue that the Government then abandoned this position during trial, changed its calculations, and prejudiced Defendants.

The Court concludes that there was no variance with regard to the tax case. From the Indictment through trial, the Government presented the same theory: Defendants intentionally inflated Chip Factory's COGS, those inflated COGS went into the SBT system, which produced Chip Factory's income statements, which were provided to the accountant and appeared on the tax returns, lowering Defendants' tax liability. There was substantial evidence that Abby Cole was actively involved in inflating the COGS and in providing the false income statements to the accountant and that Russell Cole directed inflation of the COGS. Special Agent Petricka's testimony that Chip Factory inflated the vast majority of purchase orders input into SBT was consistent with the Indictment. She further consistently testified regarding how the inflated COGS flowed through the Chip Factory's income statement, which the accountant used in preparing the Chip Factory tax returns.

Agent Bosshart's final tax calculations on the COGS issue relied upon and do not abandon Agent Petricka's factual analysis. In order to come up with her final tax calculations, however, Bosshart jumped off Petricka's analysis that the purchase orders were entered into SBT at an inflated rate. Bosshart took the amount of purchases entered in SBT (and in the tax returns) and compared that amount to the checks the company wrote to pay for computer parts. This shift in calculations was warranted by information presented during trial. Specifically, the recalculation addresses Best Buy credits that Laura Kram testified she entered into SBT regularly. Agent Bosshart's final calculations are more beneficial to the Defendants because they provide credit for not only the credits that Kram entered, but any other possible credit or offset.

Furthermore, the Government did present evidence regarding fluff – meaning padding of the COGS – and the fluff sheets, which were prepared at Russell Cole's direction. Bosshart testified that the fluff sheets were, in effect, a second set of books, so they, intentionally, did not track to the tax returns. She testified that, typically, the reason for having a second set of books is for a nefarious purpose. The jury was entitled to draw the inference that the fluff

sheets were created at Russell Cole's direction so that he could keep track internally of the inflated COGS. Therefore, the fluff sheet evidence was relevant.

Additionally, with regard to eBay, during trial, Bosshart learned that there was a double counting for eBay sales. Because there was trial testimony that the products sold on eBay consisted of products purchased by Chip Factory – not by Russell Cole personally – Bosshart adjusted her analysis for eBay.

In any case, the Government's tax evasion case was based upon multiple different allegations, with inflated COGS being only one of them. The Indictment also alleged that the Coles illegally reduced their reported income and that Abby Cole knowingly categorized personal expenses as business expenses. These allegations were proven with substantial evidence at trial.

Overall, there was no material variance. The Government's witnesses adjusted their calculations to make them more accurate based on information learned during trial. From the Indictment through the end of trial, the Government never altered its basic theory. Cf. United States v. Secor, 73 Fed. Appx. 554, 566 (4th Cir. 2003) ("Whether the government presented evidence that Secor's tax returns overstated her income, or it proffered evidence that [defendant] overstated Secor's cost of goods deductions does not alter the core

criminal conduct charged in the indictment-that [defendant] willfully assisted

Secor in preparing and filing false tax returns.).

### 6.    Evidence to Support the Tax Evasion Charges

#### a)    Admissibility of Bosshart's Testimony as an Expert

Defendants assert that the jury based its guilty verdict on the tax counts on

speculative testimony because the testimony came from expert witness Bosshart.

To the extent that Defendants are now objecting to the admissibility of expert

testimony by Bosshart, the objection is overruled.  The Court notes that

Defendants did not raise any objections to Bosshart's qualifications at trial.

Additionally, courts routinely allow expert testimony from IRS agents.  <u>See</u>

<u>United States v. Pree</u>, 408 F.3d 855, 870 (7th Cir. 2005).  In this case, Bosshart was

undoubtedly qualified, and her testimony was not speculative.  Defendants

failed to show that there was any error in this case.

#### b)    Evidence of Willfulness Regarding COGS Inflation

Defendants further argue that the Government produced no evidence that

Defendants knew that the fluff was being used to inflate the COGS in Chip

Factory's corporate tax returns.  The Court rejects Defendants' claim that there

was insufficient evidence of willfulness to sustain the tax counts.  Willfulness for

tax evasion may be inferred based on facts "such as keeping a double set of books, making false entries or alterations, or false invoices or documents, . . . concealment of assets or covering up sources of income, . . . and any conduct, the likely effect of which would be to mislead or to conceal." Spies v. United States, 317 U.S. 492, 499 (1943).   These types of conduct abounded in this case, from the secret fluff sheets serving as a second set of books to the falsely inflated purchase orders input into the SBT system.

### c)      Good Faith Reporting to their Accountant

Defendants further argue that all of the tax evasion convictions should be dismissed because Defendants presented undisputed evidence that they made all of their personal and business records available to their accountant and did not hide any of their income or expenses from him.

The Court concludes that the jury was justified in rejecting this argument. Testimony by the accountant, Michael Hartman, and the bookkeeper, Janyce Barkan, showed that Defendants were not forthright with their accountant. Defendants did not tell him that they had inflated their COGS or that they had diverted the core sales.  They provided only partial information about eBay sales

and how they treated personal expenses.  They provided false information for the preparation of their amended 2006 returns.

### d)     Abby Cole and the Tax Counts

Defendants also assert that there was insufficient evidence to find Abby Cole guilty on the tax counts.  The Court rejects this argument.

The trial evidence showed that Abby Cole herself was involved in the type of conduct indicative of willfulness, as set forth in <u>Spies</u>.  For example, she directed Barkan to book significant personal expenses as business expenses, when it was clear that they were not.  Home decorating is unambiguously not a personal expense, and Abby Cole correctly handled the expenses on her American Express card, demonstrating that she did know how to correctly account for personal expenses, and demonstrating that her mischaracterizations were not mistakes.

The Government also proved that Abby Cole signed the false amended 2006 tax returns.  As the jury was correctly instructed in Jury Instruction No. 39, the jury was allowed to infer that, based on the signing of the return, she had knowledge of its contents.

There was also clear evidence that Abby Cole knew of and was involved in both the diverted core sales and the eBay sales. Both types of sales openly involved Chip Factory employees and were widely known at the small company. Both types of sales resulted in checks to Russell Cole, which he deposited into joint back accounts over which Abby Cole had control. Also, Hartman copied her on emails regarding requests for eBay information. Because Abby Cole signed the false returns, she was presumed to know their contents, including the fact that the returns did not accurately account for the core sales or the eBay sales. Based on all of this evidence, the jury was entitled to infer that Abby Cole participated in willfully evading taxes.

**B.     Motion for a New Trial**

**1.     Legal Standard**

Under Federal Rule of Criminal Procedure 33, the Court may vacate any judgment and grant a new trial if the interest of justice so requires. The decision of whether to grant a new trial is within the broad discretion of the district court. United States v. Dodd, 391 F.3d 930, 934 (8th Cir. 2004). "The court should balance the alleged errors against the record as a whole and evaluate the fairness of the trial to determine whether a new trial is appropriate." United States v.

Eagle, 137 F.3d 1011, 1014 (8th Cir. 1998) (citation omitted). "Unless the court determines that a miscarriage of justice will otherwise occur, the jury's verdict must be allowed to stand." United States v. Garcia, 569 F.3d 885, 889 (8th Cir. 2009). The Court's authority to grant a new trial should be exercised "sparingly and with caution." Id.

### 2. Exhibit 147

Defendants assert that they are entitled to a new trial because the Court admitted inflammatory evidence that painted the Coles as racist, cold, and wealthy. Specifically, Defendants object to the admission of Exhibit 147. The Court concludes that exhibit, as redacted and presented to the jury, was relevant and not unfairly prejudicial. See, e.g., United States v. Gartmon, 146 F.3d 1015, 1021 (D.C. Cir. 1998) ("[Rule 403] does not generally require the government to sanitize its case, to deflate its witnesses' testimony, or to tell its story in a monotone.").

### 3. COGS and Fluff

Defendants reiterate their arguments regarding COGS and fluff, claiming that the Government changed its theory mid-trial, creating prejudice and an unlawful variance from the indictment. Defendants assert that the change left

them unprepared to challenge the Government's new theory. Defendants

further argue that the Court erred in denying their motion for a mistrial based on

its ruling to allow the Government to proceed regarding the COGS-fluff issue.

As the Court explained with regard to the Motion for Judgment of

Acquittal, the Government did not change its allegations that Defendants

inflated Chip Factory's COGS as part of their income tax evasion. It simply

disclosed and then relied upon recalculations of the inflated amount based upon

evidence that its tax agent learned during trial. This occurrence is normal in tax

cases and is the reason that courts routinely permit testifying revenue agents to

observe other witnesses despite a general order of sequestration. See, e.g.,

United States v. Scharf, 558 F.2d 498, 501-02 (8th Cir. 1977). Furthermore, in

order to alleviate any suggestion of prejudice or surprise based on Bosshart's

revised exhibits, the Court ordered the Government to prepare an expert report

and make Bosshart available to Defendants for deposition or interview. After the

interview took place, the Court then offered Defendants the option of a

continuance of trial so that they could consult with their experts on the issues.

Defendants declined. Defendants faced no unfair prejudice. Their current

motion is denied.

### 4.    Baby Clothes Shipment

Defendants claim that the Government submitted false testimony, prejudicing Abby Cole, when it offered Exhibit 7 into evidence and solicited testimony from Bossany that entry number 20 showed a May 21, 2004 shipment from Abby Cole of a cash bribe to Bossany. Defendants argue that the Government had, in its possession, the evidence necessary to determine that the shipment actually consisted of baby clothes. Defendants further note that Special Agent Petricka testified that she prepared Government Exhibit 7 to reflect all shipments made from the Coles to Bossany, regardless of whether they contained cash or checks.

On its face, Exhibit 7 is accurately titled "Summary of FedEx and UPS Shipments: Shipments from Russell Cole, Abby Cole, Chip Factory, Bellagio." Petricka testified that she prepared the exhibit to list all shipments, not just cash or checks. Bossany did not testify on direct examination that all of the listed shipments on Exhibit 7 constitute cash or check or gift card bribes. When asked on direct examination about item number 20 on the exhibit, Bossany testified that he knew nothing about Abby Cole sending him packages. Counsel for Abby Cole impeached Bossany by establishing that the shipment on May 21, 2004, had to have been a box, not an envelope, and Bossany testified that it contained a gift

of baby clothes, rather than cash, checks, or gift cards. The fact that Defendants sent Bossany "clothing" is specifically described in Paragraph 20 of the Second Superseding Indictment as among the various items of property that Defendants gave to Bossany during the course of their fraudulent scheme. The Government plausibly infers that, even though the shipment appeared more innocuous than the shipment of cash bribes, it was still relevant to the relationship between Defendants and Bossany. Finally, Abby Cole's counsel used the inclusion of item 20 in Exhibit 7 to cross examine Government witnesses and to attack the Government's case against Abby Cole in his closing argument.

The Court concludes that the Government did not solicit false testimony. Abby Cole suffered no prejudice.

### 5. Government's Closing Argument

Defendants assert that the Government made a number of statements in its closing argument that deprived them of a right to a fair trial because the statements were not based on the evidence. Defendants made no objections during the Government's closing argument.

Specifically, Defendants object that the Government referred to Exhibit 7. As explained above, the Court finds no error in the Government's reference to Exhibit 7 during its closing argument.

Defendants also object that the Government mentioned that it had talked to Ripstein's attorney about Ripstein's tax evasion. The Court finds that, if admission of the prosecutor's statements was error, it was harmless error, and Defendants' substantial rights were not affected.

### 6. Defendants' Proposed Jury Instructions

Defendants argue that the Court erred in failing to submit their proposed jury instructions on mail fraud, wire fraud, and conspiracy stating that the conspiracy and scheme charged included the cover-up by Bossany. The Court concludes that the jury instructions provided to the jury correctly instructed the jury on the relevant law. Additionally, the Court did provide the jury with Defendants' requested theory of the defense instructions, which included language on the issue of Bossany's alleged cover-up of their actions.

### 7. Denial of Motion to Compel or for Bill of Particulars

Without any specific argument, Defendants argue that the Court erred in denying Defendants' Joint Motion to Compel Production and Designation of

Rule 16 Materials or Alternatively for Bill of Particulars under Rule 7(f) [Docket No. 95]. Magistrate Judge Boylan issued an Order denying that motion on November 30, 2009. [Docket No. 107] Defendants did not appeal that Order.

The Court concludes that Magistrate Judge Boylan correctly ruled on this issue. Furthermore, Defendants never appealed the magistrate judge's decision. Nor did they attempt to raise the issue with this Court any time before trial. <u>See</u> Local Rule 72.2(a) ("[A] party may not thereafter assign as error a defect in the Magistrate Judge's order to which objection was not timely made."). Finally, Defendants do not point to any prejudice that they suffered as a result of the magistrate judge's ruling.

## 8. Motions in Limine

Without any specific argument, Defendants argue that the Court erred in denying their various motions in limine. The Court rejects Defendants' conclusory argument and holds that its rulings on the motions in limine were proper.

## 9. Request for Redaction

Without any specific argument, Defendants argue that the Court erred in denying their April 13, 2010 letter request for redaction of undercover tape

recordings. They claim that the Court's Order allowed the Government to introduce unduly prejudicial evidence at trial, depriving Defendants of a fair trial. The Court properly considered Defendants' request and, in fact, did grant Defendants' request that the jury be instructed that references by Defendant Russell Cole on the recordings to his lawyer were not references to his trial attorneys. The Court concludes that the evidence, as presented to the jury, was relevant and not unfairly prejudicial.

### 10. Denial of Defendants' Motions for Judgment of Acquittal

Defendants argue that the Court erred in denying their mid-trial and post-trial motions for acquittal. For the reasons set forth above, the Court concludes that the motions for judgment of acquittal were properly denied.

### 11. Objections Made During Trial

Without any specific argument, Defendants generally object to every time that the Court denied an objection by Defendants during trial. The Court rejects Defendants' conclusory argument.

### 12. Weight of the Evidence

Finally, the Court rejects Defendants' conclusory claim that the verdict was against the weight of the evidence.

Accordingly, based upon the files, records, and proceedings herein**, IT IS**

**HEREBY ORDERED**:

1.      Defendants' Renewed Joint Motion for Judgment of Acquittal [Docket No. 239] is **DENIED**.

2.      Defendants' Joint Motion for a New Trial [Docket No. 240] is **DENIED**.


Dated:   November 22, 2010            s/ Michael J. Davis_____
                                      Michael J. Davis
                                      Chief Judge
                                      United States District Court